The ESTATE OF James A. DEARING, Sr., by Opal A. DEARING, Curator; Dearing Construction, Inc. and Dearing Service, Inc., Plaintiffs,

v.

Frank A. DEARING, Jr., Greta Ann Dearing and N. David Dearing, Defendants.

Civ. A. No. 5:86–0003.

United States District Court, S.D. West Virginia, Beckley Division.

Oct. 22, 1986.

904

William H. Scharf, Bowles, McDavid, Graff & Love, Charleston, W.Va., for plaintiffs.

Alvin Emch, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court is the Defendants' motion to dismiss all counts of the Plaintiffs' complaint. The motion has been extensively briefed and the Court now deems the matter to be mature for decision.

### I. *Background*

This case generally presents a sordid example of a family business relationship gone bad. The original business relationship arose between brothers, James A. Dearing, Sr. and Frank A. Dearing, Jr. The Dearing brothers were apparently involved in a number of ventures together. They formed Dearing Brothers, Inc. and Dearing Construction, Inc. (a Plaintiff) in January of 1968. The stock ownership in both entities was divided evenly between James and Frank. Dearing Services (a Plaintiff), a West Virginia corporation engaged in janitorial services, was incorporated by the brothers in January of 1974. The brothers were also involved with Dearing Leasing Company and Dearing Brothers Subaru, Inc., both wholly owned subsidiaries of Dearing Brothers, Inc.*

Frank Dearing has been an officer of Dearing Brothers, Inc. since 1968, and has been its president since January 28, 1983. Greta Ann Dearing (a Defendant) is the wife of Frank Dearing. She was elected as a director and as the secretary of Dearing Brothers, Inc., on March 27, 1981. She holds similar positions in Dearing Construction, Inc. N. David Dearing (a Defendant) is the son of Frank and Greta Dearing. He is a director and the treasurer of Dearing Construction, Inc. The Plaintiffs allege that the three Defendants have collectively exercised complete control over Dearing Service, Inc. and Dearing Construction, Inc. since sometime in 1982.

On June 15, 1982, the County Commission of Raleigh County adjudged James Dearing to be incompetent to manage his business affairs and to care for his physical well-being. His wife, Opal A. Dearing, was named as his committee. In her capacity as committee, Mrs. Dearing brought this action. Subsequent to the commencement of the action, James Dearing died. Therefore, Opal, as Curator of James' estate, has been substituted as a Plaintiff.

The complaint filed by the Plaintiffs, although containing seven counts, can be divided into two parts. The first four counts relate to the transfer of 210 shares of stock in Dearing Brothers, Inc. by James Dearing to Frank Dearing "no earlier than January 15, 1982." The 210 shares were out of a total of 250 shares in James Dearing's name and represented 42% of the outstanding stock of Dearing Brothers, Inc.

The Plaintiffs allege that Frank Dearing took advantage of James Dearing when the latter was in a weakened mental state. They contend that Frank made fraudulent representations to James in a successful attempt to persuade James to transfer a substantial portion of his interest in Dearing Brothers, Inc. Frank Dearing is alleged to have represented falsely to James that the latter could forego contributing additional equity capital to Dearing Broth-

* The facts recited here are taken from the Plaintiffs' complaint. These facts must be taken as true on a motion to dismiss.

ers, Inc. by assigning the stock, even though James had no obligation to contribute additional equity capital in order to retain his stock in Dearing Brothers, Inc. The Plaintiffs also allege that Frank convinced James that he "could get out of debt" by selling the stock. The Plaintiffs point out that James received no valuable consideration for the transfer of his shares of stock in the corporation.

The Plaintiffs base these first four counts on the above factual account. Count I is brought pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and *Rule* 10b–5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10(b)(5). Counts II through IV are pendant claims based on state law. Count II is brought pursuant to *W.Va. Code*, § 32–1–101, the state analogue to § 10(b) of the federal act. Count III is based upon common law fraud and Count IV alleges a breach of fiduciary duty.

Counts V, VI and VII of the complaint are unrelated to the January 15, 1982, sale of stock by James to Frank. The Plaintiffs allege that not later than the date James Dearing was declared incompetent, the Defendants embarked on a scheme and pattern of conduct which included selling off heavy-duty equipment of Dearing Construction, Inc. and Dearing Service, Inc.; loaning at no interest to members of the Defendants' family large sums of the corporations' liquid funds; discharging valuable employees of the corporations and discontinuing profitable contractual relationships with the valued customers of the corporation and its subsidiary. The Plaintiffs allege that this pattern of conduct by the Defendants harmed the Plaintiffs financially and benefitted the Defendants personally and the corporations they controlled.

On the basis of the above contentions, Count V of the complaint alleges a cause of action arising under 18 U.S.C. § 1962(c), commonly known as Civil RICO. Count VI states a claim for breach of fiduciary duty. Finally, Count VII is a stockholder's derivative suit brought pursuant to *Rule* 23.1 of the Federal Rules of Civil Procedure, hence the joinder of the two corporations as plaintiffs. Counts VI and VII invoke the pendant jurisdiction of the Court.

The Defendants' motion to dismiss attacks all counts of the Plaintiffs' complaint on the ground that they are barred by the applicable statute of limitations. The Defendants also contend that Count V, the Civil RICO count, fails to state a claim. The Plaintiffs argue that at the least the limitation issues cannot be decided at this stage of the litigation and that Count V does state a claim for which relief can be granted.

## II. *Discussion*

The Court turns first to the arguments of the Defendants made with respect to the first part of the Plaintiffs' complaint: Counts I, II, III and IV. Much of the discussion will center on Count I. As the Defendant points out, since Counts II, III and IV are pendant claims, they must be dismissed if the count to which they are appended is dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because the issues are somewhat related, the discussion will also have application to the second part of the Plaintiffs' complaint, allowing for a more truncated analyses to that portion.

## A. *The Applicable Statutes of Limitation.*

The Defendants, in making their statute of limitations argument as to Count I, point out that neither Section 10(b) nor *Rule* 10b–5 contains a limitations period. Therefore, they aptly observe that the limitations period for the procedurally incomplete federal cause of action must be borrowed from an analogous state cause of action. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *O'Hara v. Kovens*, 625 F.2d 15 (4th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). They urge upon the Court the limitations period found in the Blue Sky Act of West Virginia, *W.Va.Code*, § 32–1–101, *et seq.* The limitations period

under that Act is three years. *W. Va. Code,* § 32–4–410(e). Since the Plaintiffs' complaint alleges that the sale of stock by James to Frank occurred before June 15, 1982, more than three and a half years prior to the filing of the lawsuit, the Defendants argue that Count I is time barred. As an initial matter, the Court has little difficulty in concluding that the appropriate limitations period is three years. *See e.g., Baker v. Wheat First Securities,* 643 F.Supp. 1420 (S.D.W.Va., 1986) (three-year limitation period appropriate for Rule 10b–5 action). It is apparent from a reading of the relevant portions of the federal and state acts, that the state act was closely tailored after the federal. Their purposes are similar. Also, other courts have borrowed the limitation periods of state Blue Sky acts for 10b–5 suits. *Fox v. Kane-Miller Corp.,* 542 F.2d 915 (4th Cir. 1976); *Goldstandt v. Bear, Stearns & Co.,* 522 F.2d 1265 (7th Cir.1975). It being an analogous state creation, the limitations period under the West Virginia Blue Sky Act is borrowed for the cause of action alleged in Count I of the Plaintiffs' complaint.

The Plaintiffs do not dispute that the Court may adopt a three-year limitations period. They contend, however, that the Defendants' arguments ignore principles of equitable tolling which work in their favor. The Plaintiffs identify three principles which they believe come into play here: Equitable estoppel, the discovery rule and disability. The first is of little merit, but the second and third, taken together, require some thought and study.

■ The Plaintiffs briefly argue in one of their memoranda that the Defendants are estopped from asserting the statute of limitations "for so long as the Plaintiffs refrained from instituting suit in reliance on Defendants' representations of an intent to negotiate a settlement between the parties." Plaintiffs' responsive memorandum at 4. The Defendants correctly point out that the question of estoppel is not properly before the Court. The Plaintiffs make no allegations regarding reliance or estoppel in their complaint. Neither have they enclosed affidavits in support of the naked allegations of counsel in the memorandum. In any event, the estoppel argument fails on the merits. There is no evidence that the Defendants promised or agreed not to assert the statute of limitations as a defense. In the absence of an affirmative act by the Defendants which induces the Plaintiffs to refrain from timely bringing suit, the Plaintiffs cannot successfully make out a case for estoppel. *Humble Oil & Ref. Co. v. Lane,* 152 W.Va. 578, 165 S.E.2d 379 (1969); *see also Beverage v. Harvey,* 602 F.2d 657 (4th Cir.1976).

Of greater significance is the Plaintiffs' invocation of the discovery rule. They argue that the statute of limitations did not begin to run until the Plaintiffs knew, or by the exercise of reasonable diligence should have known, of the alleged fraud practiced upon them.

■ It is well settled that although state law supplies the length of a limitations period, federal law determines when that period begins to run. *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873 (9th Cir.1984), *cert. denied,* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984); *Kirschner v. Cable/Tel. Corp.,* 576 F.Supp. 234 (E.D. Pa.1983). The federal rule is as the Plaintiffs intimate: the period commences when the Plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence. *Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301 (9th Cir.1982). This rule stems from the Supreme Court's adoption "as its own the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (*quoting Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636). The *Holmberg* court went so far as to say that

"[t]his equitable doctrine is read into every federal statute of limitation." *Id.*

■ The Defendants admit that the discovery rule has been applied in *Rule* 10b–5 suits, *see e.g., Fox v. Kane-Miller Corp.,* 542 F.2d 915 (4th Cir.1976); *Newman v. Prior,* 518 F.2d 97 (4th Cir.1975), but they argue that to do so here would be to ignore the unique nature of the West Virginia limitations period being borrowed. They argue that the limitations period found in *W.Va.Code,* § 32–4–410(e) is a statute of repose. They argue that the statute makes no provision for a discovery rule and that the language is absolute: "No person may sue under this section more than three years after the sale." They attempt to analogize the statute to federal securities statutes which have been construed to be absolute in terms of timeliness. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301 (9th Cir.1982) (holding that time limitation in section 13 of the Securities and Exchange Act of 1934 did not allow for equitable tolling). The Court does not find the Defendant's arguments to be persuasive. The arguments sidestep the well settled rule that federal law decides when the limitations period begins to run. The nature of the state statute is relevant only so far as it influences the question of whether it is analogous to the federal cause of action. Any other special characteristics of the statute are irrelevant.

The case of *Kirschner v. Cable/Tel. Corp.,* 576 F.Supp. 234 (E.D.Pa.1983), is instructive. In a *Rule* 10b–5 suit, the *Kirschner* court borrowed a three-year limitations period from the Pennsylvania Blue Sky Act. As an alleged statute of repose, the Pennsylvania statute contains more language of an "absolute" character than does the West Virginia statute. The Pennsylvania statute provided that "an action is barred unless it is brought before the expiration of three years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives notice or upon the exercise of reasonable diligence could have known of the facts constituting the violation, *whichever*

*shall first expire.* " *Id.* at 239–40 (emphasis added) (summarizing Pa.Stat.Ann. tit. 70 § 1–504(a) (Purdon Supp.1982)). Although the court noted that the state statute contained its own one-year tolling provision, it held that such a tolling provision could not "preclude application of the federal equitable tolling doctrine to the fixed limitation period set out in the state statute." *Id.* at 240.

The Defendants rely upon the Supreme Court's teaching in the relatively recent case of *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) that a federal court, in borrowing a state statute of limitations, must take the tolling rules of the state also. Specifically, the *Johnson* court had the following to say:

"In virtually all statutes of limitations, the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the state's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim."

*Id.* at 463–64, 95 S.Ct. at 1721–22.

The language in *Johnson,* though seemingly powerful, is inapposite to the case at hand. The *Johnson* court was dealing with the question of whether the limitations period on a minority employee's § 1981 action was tolled during the pendency of his Title VII litigation. The borrowed state period did not provide for tolling. The Court was not dealing with the federal equitable rule on fraud. Moreover, the Court noted that "considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration." *Id.* at 465, 95 S.Ct. 1722. In a more recent case dealing with the borrowing of a state statute of limitations, the Supreme Court made the following observation:

"[T]he Court has not mechanically applied a state statute of limitations simply because a limitations period is absent

from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. 'Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide.' *Occidental Life Ins., Co. v. EEOC*, 432 U.S. 355, 367 [97 S.Ct. 2447, 2454, 53 L.Ed.2d 402] ... (1977), *quoting Johnson v. Railway Express Agency*, 421 U.S. 454, 465 [95 S.Ct. 1716, 1722, 44 L.Ed.2d 295] ... (1975)."

*DelCostello v. Teamsters*, 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). There is an important federal policy in preventing fraud associated with the sale of securities. *Chiarella v. U.S.*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). The application of the equitable tolling rule furthers that purpose. *Tomera v. Galt*, 511 F.2d 504 (7th Cir.1975).

Continuing with their many-pronged argument, the Defendants contend that even if a discovery analysis is applied to this case, the date the Plaintiffs knew or should have known of any fraud was the date of sale. The Defendants argue that the Plaintiffs knew all of the facts at the time of the sale. The Plaintiffs, according to the Defendants, cannot discover merely the legal significance of the facts at a later time and rely upon the discovery rule. The Defendants rely upon the Seventh Circuit case of *Goldstandt v. Bear, Stearns & Co.*, 522 F.2d 1265 (7th Cir.1975). In *Goldstandt* the plaintiffs, at the suggestion of the defendant's representative, became involved in illegal stock sales. They claimed that the representative assured them that the sales were proper. As a consequence of their illegal activity, the plaintiffs were heavily fined and expelled from the National Association of Securities Dealers. Bringing suit after the applicable limitations period had expired, the plaintiffs argued that the discovery tolled the statute. The Seventh Circuit disagreed. The court, *inter alia*, found that the plaintiffs "clearly knew all the relevant facts in regard to the alleged fraud. It was only the legal significance of these facts that was unknown to plaintiffs." *Id.* at 1269. The court held that the policy behind the statute of limitations required the plaintiffs to seek legal advice. Ignorance of the law did not toll the limitations period. *See also U.S. v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979) ("a plaintiff ... armed with the facts about the harm done to him, can protect himself by seeking advice in the ... legal community.").

■ The Defendants contend that the alleged representations referenced in the Plaintiffs' complaint are at most misstatements of the law. For instance, the Plaintiffs allege that Frank represented to James that the latter was "getting out of debt" by selling his shares. They contend that Frank misled James by "omitting to state that as a shareholder, [James] had no obligation to guarantee corporate debt and was otherwise not responsible for the debts of Dearing Brothers, Inc. ...." Plaintiffs' complaint at 7. The Court agrees with the Defendants that the alleged representations, as identified in the complaint, were legal in nature rather than factual. That they were legal misrepresentations does not mean that they were not fraudulent. A person may be defrauded as easily by a misstatement of the law as by a misstatement of fact. As discussed above, however, discovery of the true state of the law is not accorded the same deference as a discovery of the true state of the facts. To quote the Supreme Court: "We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment." *Kubrick, supra*, at 122, 100 S.Ct. at 359. Absent other considerations, therefore, the plaintiff's later discovery that the representations were legally incorrect would not toll the statute. The inquiry does not end here, however.

Greatly intertwined with the Plaintiffs' allegations that Frank made representa-

tions to James which were legally incorrect, is their contention that he was able to do so because of the weakened mental state of James. Thus, the Plaintiffs' seek to invoke the savings clause found in *W.Va.Code*, § 55-2-15. That statute tolls the statute of limitations for a person who is "insane" at the time the cause of action accrued. Such tolling continues until the disability is lifted. In no event, however, can the tolling exceed twenty years.

The Defendants offer three arguments as to why the Plaintiff's alleged disability does not toll the statute here. First, the Defendants contend that the savings clause found in § 55-2-17 is not applicable to the limitations period set forth in *W.Va.Code*, § 32-4-410(e). They point out the obvious: The savings clause is in Chapter 55 of the Code and the statute of limitations being borrowed is in Chapter 32. The Defendants argue that the savings clause found in § 55-2-15 applies to only those limitation periods found in Article 2 of Chapter 55. As evidence that their restrictive reading is correct, the Defendants seize upon the introductory language of the statute which speaks in terms of "such personal action." To the Defendants, this wording reflects a legislative intent to confine the statute's effect to those causes of action discussed in the sections preceeding § 55-2-15. Moreover, the Defendants assert, the absence of any tolling provision associated with § 32-4-410 indicates that the bar of the statute is absolute, that is, not susceptible to tolling. The Court need not decide at this point if the Defendants' argument is meritorious, because it believes the argument to be misplaced. As discussed *supra,* federal law controls when the statute of limitation—the length of which is determined by state law—commences to run. For the Plaintiffs' federal cause of action under *Rule* 10b-5, the relevant inquiry is whether the Plaintiffs' disability argument can find a home in the special federal rule of equitable tolling for cases of fraud. The Court believes it can. To paraphrase the *Holmberg* court, the equitable tolling principle read into every federal statute of limitations serves to protect the plaintiff injured by fraud until such time as he, without want of care or diligence, discovers the fraud. The state's saving clause, designed to protect those who may not be cognizant of their legal rights because of disability, is consistent with the equitable principle of federal law.

■ Alternatively, the Defendants argue that, conceding the relevancy of a disability analysis, the Plaintiff, James Dearing, was not under a disability at the time the cause of action accrued. They note that the sale of stock occurred sometime around January 15, 1982, and that James was not declared an incompetent until June 15, 1982. They make the additional argument that even a declaration of incompetency does not equal the statute's requirement of insanity. They cite *Keller v. Hartmen,* 333 S.E.2d 89 (W.Va.1985) (finding of incompetence does not demonstrate that the person is also insane). Assuming arguendo that the particular requirements of the state saving clause may be applied to the federal equitable principle, the Court believes the Defendants' argument proves too much. The Defendant is quite correct that a finding of incompetency is not a finding of insanity. A person presumably could be incompetent, so as to require appointment of a committee, and not be insane. On the other hand, a person who is insane certainly would be incompetent. Incompetency can be viewed as a less severe condition than insanity. Therefore, that James Dearing was adjudged incompetent on June 15, 1982, does not mean that he was insane on that date. Conversely, it does not mean that he was sane either. Likewise, just because James' mental faculties were not evaluated until after the sale does not mean that he was sane at the time of sale. It is an open question. The burden is on the Plaintiffs to establish by a preponderance of the evidence that James was insane at the time the cause of action accrued. *Fines v. Kendrick,* 219 Va. 1084, 254 S.E.2d 108 (1979). The allegations of the Plaintiffs' complaint are sufficient to survive a motion to dismiss.

■ The Defendants' third argument is that if James indeed was laboring under a disability, the disability was removed when his committee was appointed. The Defendants cite no case law in support of their position, but argue that it would be absurd to continue tolling the limitations period once a committee is appointed. They point out that a committee is charged by law with managing the business affairs of the incompetent and that a committee is authorized to sue on behalf of the incompetent. *W.Va.Code,* § 27–11–4. The Court, too, has found no West Virginia cases which discuss the effect a committee appointment has on a disability. Nevertheless, the Court finds the Defendants' position to have merit. The West Virginia court has forcefully said that it is not only the legal right, but it is the legal duty, of a committee to sue for damages done to the estate of the incompetent. *Johnson v. Chapman,* 43 W.Va. 639, 646, 28 S.E. 744 (1897). The Court does not, however, believe that the disability is removed immediately upon appointment of the committee. Rather, if the incompetent was legitimately disabled, the focus shifts to the reasonableness and diligence of the committee in discovering the fraud perpetrated upon her charge. While an examination of the mental acumen of the incompetent is by necessity somewhat subjective in nature, the actions of the committee are measured by an objective standard. Consistent with the prior discussion on the legal significance which attaches to the alleged representations, the pertinent inquiry here is when the committee became aware of the details surrounding the sale of stock, not when the legal significance of those details became apparent to her. If she knew, or should have known, of the facts more than three years prior to the initiation of this action, Count I would be time barred.

As to Count II, the Defendants raise a statute of limitations argument similar to the one made against Count I. There is no dispute, however, over which statute of limitations applies. Since the cause of action arises under the West Virginia Blue Sky Act, it is controlled by the three-year limitations period set forth in that Act. *W.Va.Code,* § 32–4–410(e). The arguments made by the Defendants against equitable tolling are discussed above. Upon consideration of those arguments, the Court arrives at one central conclusion: The question is a close one. As with most inquiries into the legislative intent of West Virginia statutes, the Court is hampered by a nonexistent record of the legislative history. Given that the Court has decided that Count I survives the Defendants' motion to dismiss, the Court defers ruling on the statute of limitations issue raised as to Count II. The causes of action are quite similar; therefore, the Court does not discern any prejudice inuring to the parties by way of additional discovery.

■ Counts III and IV are both common law actions brought under West Virginia law. Count III alleges common law fraud. Count IV is based upon an alleged breach of fiduciary duty. The Defendants argue that a two-year statute of limitations applies to both causes of action. The Plaintiffs disagree. They argue that either a five or ten-year statute of limitations is applicable because a contract is involved. *See W.Va.Code,* § 55–2–6. The Court is not persuaded by the Plaintiffs' arguments. The West Virginia Supreme Court has held that "a complaint that could be construed as being either in tort or on contract will be presumed to be on contract whenever the action would be barred by the statute of limitation if construed as being in tort." *Cochran v. Appalachian Power Co.,* 162 W.Va. 86, 246 S.E.2d 624, 628 (1978). The complaint must be susceptible to being construed as being on a contract. The Plaintiffs seem to believe that the longer limitations period can be invoked because the causes of action are "related" to contracts. In many instances of tort, however, a contract or two can be found lurking in the factual picture. The complaint here sounds in tort, not contract. It cannot be described otherwise.

Although the Court finds that a two-year statute of limitations applies to Counts III and IV, the Court will not dismiss the

counts. The discussion had above with regard to the discovery rule and the disability analysis is certainly pertinent to these two causes of action. It may be difficult for the Plaintiffs to bring themselves within the two-year period, but, by the same token, they cannot be precluded from doing so at this stage of the litigation. Therefore, the two causes of action remain viable.

▮▮▮▮ The Court need not tarry long with the statute of limitations issues raised in connection with Counts V, VI and VII. The analysis employed earlier carries over to these counts. Count V alleges a claim under 18 U.S.C. § 1962(c) (civil RICO). Count VI is based on an alleged breach of fiduciary duty. Count VII is a shareholders derivative action. As to the latter two counts, a two-year statute of limitations is appropriate and the discovery rule and disability savings clause apply. For the civil RICO claim, a federal court must borrow the limitations period for an analogous state cause of action. In this instance, the analogous cause of action is one for common law fraud. *Umstead v. Durham Hosiery Mills, Inc.*, 578 F.Supp. 342 (M.D.N.C.1984); *Kirschner v. Cable/Tel. Corp.*, 576 F.Supp. 234 (E.D.Pa.1983). As mentioned above, a two-year statute of limitations for fraud is the rule in West Virginia. *W.Va.Code*, § 55–2–12. And, once again, the discovery rule and disability analysis apply. The Plaintiffs also point out that the Defendants misstate the facts in arguing that Counts V, VI and VII are time barred. The Defendants represent that the acts complained of occurred "prior to June 15, 1982, the date that James was declared incompetent." Defendants' memorandum at 5. The Plaintiffs controvert the Defendants' representation. They note that the complaint alleges that the acts complained of *began* no later than June 15, 1982. "Defendants misread the Complaint, a fair reading of which reveals that Plaintiffs do not believe that the alleged misconduct has ceased, and for aught they know, is still continuing." Plaintiffs' responsive memorandum at 6. The Plaintiffs' version of the complaint is accurate. Therefore, in addition to the factual questions regarding equitable tolling, there appears to be a question as to when the Plaintiffs' cause of action accrued.

**B.** *Civil RICO: Failure to State a Claim.*

The Court now turns to the only substantive argument made by the Defendants. They allege that Count V of the Plaintiffs' complaint fails to state a claim for which relief can be granted.

In reviewing the Defendants' arguments as to the shortcomings of the civil RICO count, the Court is impressed first by the Defendants' underestimation of the reach of the civil RICO statute. The following excerpt from their argument is characteristic:

> "At its essence this lawsuit is a domestic quarrel about who is entitled to what in a set of closely held family corporations. This is simply not the type of case for which RICO and the federal courts were intended."

Defendants' memorandum at 11. Earlier in their argument the Defendants had observed that "RICO was passed as part of the Organized Crime Control Act for the purpose of helping to curtail organized crime activities." Defendants' memorandum at 7. The tone of the Defendants' argument is one of mild disbelief that the facts of this case could give rise to charges of "racketeering." Whatever the merits of this particular action may prove to be, the Defendants appear to be unaware of their vulnerability to the recently extended reach of civil RICO.

In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482 (2d Cir.1984), the Second Circuit opined that "the uses to which private civil RICO has been put have been extraordinary, if not outrageous." It believed the statute to have been perversely twisted away from its intended purpose of providing a weapon against organized crime. The Supreme Court, in reversing the Second Circuit, criticized the lower court's restrictive reading of the statute. Congress,

according to the Supreme Court, wanted to reach both "legitimate" and "illegitimate" enterprises.

> "[Legitimate enterprises] enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences. The fact that § 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued....
>
> It is true that private civil actions under the statute are being brought almost solely against such defendants, rather than against the archetypal, intimidating mobster."

473 U.S. 479, ———, ———, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346, 360–61. The Supreme Court also noted in *Sedima* that the " 'extraordinary' uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail and securities fraud...." *Id.* 473 U.S. at ———, 105 S.Ct. at 3287, 87 L.Ed.2d at 361. With this in mind, the Court turns its attention to the Defendants' argument that the Plaintiffs have failed to allege the necessary predicate offenses.

As a starting point, the Court notes that the Plaintiffs' civil RICO action is given life by the terms of 18 U.S.C. § 1964(c).

> "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains in the cost of the suit, including a reasonable attorney's fee."

A violation of § 1962 includes acquiring an interest in or conducting the affairs of an enterprise through "a pattern of racketeering activity." Racketeering activity, as defined in § 1961(1), means the commission of any one of a laundry list of criminal offenses listed in that section. A "pattern of racketeering activity" requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5). Therefore, a civil RICO plaintiff must allege and prove at least two "predicate offenses" to succeed in his action.

The Defendants argue that the Plaintiffs have not alleged the commission of any predicate offenses. A review of the Plaintiffs' complaint reveals a listing of several instances of alleged wrongdoing by the Defendants. The Plaintiffs allege that the Defendants have (1) sold off the heavy-duty equipment of Plaintiff Dearing Construction, Inc. and Plaintiff Dearing Service, Inc.; (2) made large loans without interest to themselves; (3) discharged valuable employees; and (4) discontinued profitable contractual relationships with valued customers. The Plaintiffs characterize the above acts as a scheme which operated as a fraud upon the Plaintiffs, in that they were lulled into believing that the two Plaintiff corporations were being properly managed.

The Court agrees with the Defendants that the above acts, standing alone, do not constitute predicate offenses within the meaning of § 1981. The Plaintiffs, however, also allege that the Defendants, in practicing their fraud upon the Plaintiffs, "made use of the United States Mail, interstate telephones, and the means and instrumentalities of interstate commerce." The obvious intent of the Plaintiffs, although not explicitly stated, is to charge the Defendants with mail and wire fraud. Those two offenses, codified in 18 U.S.C. §§ 1341 and 1343, respectively, are aimed at a person who uses the mails or a telephone—to use a common example of wire fraud—in a "scheme or artifice to defraud." Hence, the Plaintiffs charge the Defendants with developing a scheme to defraud the Plaintiffs by employing the tactics outlined above.

The problem with the Plaintiffs' complaint—and the Defendants implicitly argue this point—is that it does not plead fraud with the particularity required under *Rule* 9(b) of the Federal Rules of Civil Procedure. The requirement of that rule applies to fraud allegations in civil RICO claims. *Haroco, Inc. v. American National Bank & Trust Co. of Chicago,*

747 F.2d 384 (7th Cir.1984), *affirmed on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Tryco Trucking Co., Inc. v. Belk Store Services, Inc.,* 608 F.Supp. 812 (W.D.N.C.1985). Here, the Plaintiffs have not alleged what misrepresentations were made, what was concealed or any other circumstance surrounding the alleged fraud. While *Rule* 9(b) may not require allegations as to date, place or time, *see Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), the Plaintiffs should employ a "means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* Moreover, Plaintiffs must allege more than that the Defendants used the mails or a telephone in connection with a fraudulent scheme. *Howell Petroleum Corp. v. Weaver,* 780 F.2d 1198 (5th Cir.1986) (on petition for panel rehearing). "The parties must at the minimum supply a general allegation of at least the nature of the mailings or wire communications so that the Court can determine that a cause of action has been pleaded." *Ray v. Karris,* 780 F.2d 636, 644 (7th Cir.1985). Of course, a court also must liberally construe a complaint in accordance with the spirit of the notice-pleading procedure of the Federal Rules of Civil Procedure and of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Notwithstanding the latter comment on liberal construction, the Court feels compelled to order the Plaintiffs to amend their complaint to comport with the requirements of *Rule* 9(b). The Court believes such a course to be fair to the interests of both the parties.

### III. *Conclusion*

In accordance with the above reasoning, the Court finds the Defendants' arguments on statutes of limitation to be premature pending development of the facts. On the other hand, the Court agrees with the Defendants' criticism of Count V of the Plaintiffs' complaint. Accordingly, the Court grants the Plaintiffs leave to amend their

complaint; the same to be done within fourteen days of the date this order is entered.

The Court realizes that the controlling Time Frame Order has become dated pending the Court's ruling on the motion to dismiss. Consequently, a new Time Frame Order will be entered.