**Richard C. GEETING, Plaintiff,**

v.

**Jerry PRIZANT, Ruth Prizant, and J.S.P., LTD., Defendants.**

No. 86 C 6764.

United States District Court, N.D. Illinois, E.D.

June 8, 1987.

Paul D. Frenz, McBride Baker & Coles, Chicago, Ill., for plaintiff.

Stephen A. Cohen, John S. Mrowiec, Timothy R. Conway, Greenberger Krauss & Jacobs, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This case is before the Court on motion of defendants Jerome Prizant ("Jerome"), Ruth Prizant ("Ruth") and JSP, Ltd. ("JSP") for summary judgment against plaintiff Richard C. Geeting on Count I of his suit alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982) and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1986), as well as claiming violations of state law. In addition to their summary judgment motion, the defendants have moved for sanctions against Geeting under Fed.R.Civ.P. 11 for purportedly filing a complaint which was not well-grounded in fact or warranted by existing law. For the following reasons, we deny both of the defendants' motions.

## I. FACTUAL BACKGROUND

Geeting's complaint essentially asserts that he contracted and paid for a certain amount of JSP stock which he never received. Many of the most relevant facts, as discussed below, are in dispute. However, we can briefly summarize those facts as to which there is no disagreement. On December 29, 1979, Geeting tendered a check for $10,000 to Jerome and on February 1, 1980, he paid $20,000 to Ruth. The character of those two payments is in dispute. Complaint, ¶¶ 11, 12; Defendants' Rule 12(E) Statement of Material Facts ("Defendants' Statement"), ¶¶ 1, 2. Several drafts of a proposed written agreement regarding the sale of JSP stock to Geeting were prepared and circulated between Geeting and Jerome, although no written agreement was ever executed or signed by any of the parties. Complaint, ¶ 16; Defendants' Statement, ¶¶ 5, 7.

We now turn to disputed facts alleged in the complaint to fill in the details underlying Geeting's legal contentions. According to Geeting, he orally agreed with Jerome in late 1979 to purchase fifty percent of the

stock in JSP for an initial payment of $30,-000 and a subsequent payment of $45,000. Complaint, ¶ 10. At that time, Ruth owned all outstanding JSP stock. *Id.* Although no written document was ever executed, Geeting claims that the oral agreement was controlling and that the draft agreements reflected the parties' intent as well as the terms of the oral agreement. *Id.* at ¶ 16. The defendants deny that anything took place other than preliminary negotiations regarding the sale of JSP stock to Geeting. Under their version of the facts, the initial $10,000 payment was a loan to Jerome from Geeting. Affidavit of Jerome Prizant ("Jerome Aff."), ¶¶ 5, 6. Furthermore, Jerome contends that he had preliminary conversations with Geeting about the latter's acquiring JSP stock and that Geeting offered to give Jerome an additional $20,000, in addition to the $10,000 loan, as a deposit for a stock purchase. Jerome Aff. at ¶ 7. Jerome also states that he later refunded the entire $30,000 to Geeting after their negotiations broke down. *Id.* at ¶ 11. Geeting admits receiving certain payments totaling approximately $30,000, but claims that Jerome made them as interest payments on a separate loan that Geeting made to Jerome which was unrelated to the purported stock transaction.

Under Geeting's version of the facts, Jerome did not inform him until May 1986 that Geeting was not going to receive any shares in JSP after representing to Geeting for over five years that he would eventually receive his stock certificates. Complaint, ¶ 18. Geeting alleges that the defendants never intended to tender the stock certificates to him and that they materially misrepresented their position during the negotiations leading to the oral agreement. *Id.* at ¶¶ 8, 9.

**1.** Summary judgment is appropriate only where the moving party demonstrates that no genuine issues of material fact exist and that it is accordingly entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Van Zandt v. Thompson,* 649 F.Supp. 583, 588 n. 5 (N.D.Ill.1986). The moving party bears the burden of clearly establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Furthermore, in evaluating the summary judgment motion, the

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]

Based on this set of facts, the defendants move for summary judgment on Geeting's 10b-5[2] claim on two main grounds. First, they argue that Geeting has no standing to bring a suit under the federal securities laws because there was no agreement to sell JSP stock and Geeting is not, therefore, a "purchaser" within the meaning of § 10(b) and case interpretations thereof. In the alternative, the defendants maintain that even if such an agreement existed, the statute of limitations bars any claim which Geeting might have since the alleged agreement was made in 1979 or 1980 and Geeting did not file the present action until September 9, 1986.

### A. *Standing—Existence of the "Purchase" of a Security*

The first attack which the defendants launch is that there was no agreement for the purchase of a security. They argue that they never intended to be bound by any preliminary oral negotiations, and Jerome has maintained that both he and Geeting stated that there would be no agreement until a written document was signed. Jerome Aff. at ¶ 8. The defendants also contend that any oral agreement was within the statute of frauds and thereby unenforceable. Such an unenforceable agreement, they conclude, is not actionable under 10b-5.

We first turn to the issue of whether an oral agreement, though unenforceable under the statute of frauds, is a sufficient foundation for a 10b-5 action. Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any

Court must read the facts in the light most favorable to the non-moving party. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 460 (7th Cir. 1986), *cert. denied,* — U.S. —, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987).

**2.** For simplicity, we refer to actions under 15 U.S.C. § 78j(b) and Rule 10b-5 as "10b-5 actions" or "10b-5 claims."

facility of any national securities exchange— ... (b) To use or employ, *in connection with the purchase or sale of any security* registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1982) (emphasis added).[3] A fundamental standing requirement in a § 10(b) action is that there be an actual purchaser or seller of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The purchaser-seller requirement, as it is sometimes known, may be met if there is a contract to sell or buy securities, 15 U.S.C. § 78c(a)(13)–(14) (1982), even if the performance is not forthcoming. *Abrams v. Oppenheimer Government Securities, Inc.*, 737 F.2d 582, 587 (7th Cir. 1984). What complicates the present case is the absence of any written contract. While an oral agreement may sometimes suffice as the basis of a 10b–5 action, *see, e.g., Northland Capital Corp. v. Silver*, 735 F.2d 1421, 1428–29 (D.C.Cir.1984) (if agreement demonstrates mutual assent, 10b–5 claim may proceed), the extent to which this must be a legally binding oral contract remains unclear. The two courts which we have found that discuss the issue have disagreed. *See Desser v. Ashton*, 408 F.Supp. 1174, 1176–77 (S.D.N.Y.1975) (even if oral agreement for purchase of securities is unenforceable under applicable statute of frauds, it may independently be sufficient to satisfy the purchaser-seller requirement of 10b–5), *aff'd mem.*, 573 F.2d 1289 (2d Cir.1977) and *Southeastern Waste*

*Treatment, Inc. v. Chem-Nuclear Systems, Inc.*, 506 F.Supp. 944, 948–49 (N.D. Ga.1980) (although a party who has a contract to purchase securities has 10b–5 standing, an unenforceable oral agreement does not suffice as a contract).

■ We need not adopt one position or the other in this case, however, because we find that there is a genuine issue of material fact as to whether the alleged oral agreement fell within the statute of frauds. Accordingly, summary judgment would not be appropriate under either construction of § 10(b). If we adhere to *Desser*, the statute of frauds is irrelevant to the standing issue; if we follow *Southeastern Waste*, there is a genuine issue of fact with respect to the statute of frauds.

The Illinois statute of frauds for agreements to sell securities provides that a contract for the sale of securities is not enforceable unless it is evidenced by a writing or "delivery of the security has been accepted or *payment has been made* but the contract is enforceable under this provision only to the extent of such delivery or payment." Ill.Rev.Stat. ch. 26, ¶ 8–319 (1985). As we have briefly discussed above, the parties here dispute the factual characterization of the $10,000 payment on December 29, 1979 and the $20,000 payment on February 1, 1980. According to Geeting, these payments were made in conjunction with the oral agreement to purchase JSP stock which established a $30,000 initial payment with a possible $45,000 subsequent payment. Affidavit of Richard C. Geeting ("Geeting Aff."), ¶¶ 2, 3; Geeting Dep. at 101–02, 115, 239. To the extent this constitutes a partial performance of the agreement, that agreement is taken out of the statute of frauds with respect to the shares of JSP stock which $30,000 would buy. Jerome portrays a completely differ-

---

**3.** Rule 10b–5 provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

ent version of these payments, contending that the initial $10,000 payment was a loan and that the $20,000 was "earnest money" for the possible purchase of stock pursuant to a written agreement then being negotiated. Jerome Aff. at ¶¶ 5–8. Furthermore, the parties dispute whether this $30,000 was returned to Geeting. Geeting Aff. at ¶ 11; Jerome Aff. at ¶ 11. What these differing characterizations demonstrate is that the trier of fact will ultimately be faced with a credibility determination regarding the testimony of Geeting and Jerome as to these transactions. That type of determination is particularly inappropriate for resolution by summary judgment. 10A, C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2726 (1983). Furthermore, reading the facts in the light most favorable to Geeting, we conclude there is sufficient evidence by which a reasonable jury could return a verdict for Geeting on the issue of the existence of an enforceable oral agreement not within the applicable statute of frauds. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Accordingly, this aspect of the defendants' summary judgment motion is denied.

### B. *Timeliness*

We next turn to the issue of the timeliness of Geeting's complaint in light of the fact that even he alleges that the oral agreement underlying this action was made as long ago as late 1979. Since causes of action under § 10(b) are implied, there is no explicit statute of limitations embodied in the federal securities act. Instead, federal courts look to the most analogous limitations period controlling in the state in which the action is brought. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 456 (7th Cir.1987). The Seventh Circuit, in recently applying this principle, reaffirmed its previous holdings that the most analogous statute of limitations in Illinois is the three-year period established under the Illinois securities statute. In its current form, that section provides in pertinent part:

No action shall be brought for relief under this Section ... after 3 years from the date of sale, provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of ... this Act which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of (1) the violation of this Act, or (2) the date upon which the party bringing such an action has knowledge of the alleged violation of this Act; but in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable.

Ill.Rev.Stat. ch. 121½, ¶ 137.13 D (1985). Thus, if we assign the date of the oral agreement as the relevant date of purchase for the purposes of the statute of limitations period, Geeting appears to be late for the game. Nonetheless, further discussion is necessary because Geeting contends that he was a victim of fraudulent concealment which requires tolling of the relevant limitations period.

Identifying the appropriate source of the applicable tolling doctrine in 10b–5 litigation is a continually vexing problem for federal courts, and it is not made easier by mixed signals in recent Seventh Circuit opinions. In *Angelos,* the Court reflected its continuing adherence to the previously recognized rule that while federal courts look to state law for the basic period of limitations, they remain bound by federal principles when discussing equally important matters such as (1) when the limitations period begins to run and (2) when the period can be tolled. *Angelos,* 815 F.2d at 456–57; *see also Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000, 1004 (7th Cir.1984). However, less than two months later, a different panel of the court seriously questioned the principles underlying that rule, suggesting along the way, first, that perhaps it is *state* tolling rules that should apply and, second, that perhaps the better approach all along would have been to draw on explicit rights of action in the federal securities statutes which couple uniform statutes of limitations with three-year statutes of repose. *Norris v. Wirtz,*

818 F.2d 1329, 1331–34 (7th Cir.1987). Despite Judge Easterbrook's erudite digression in *Norris,* the court did not reverse the substantial line of its own cases, including its recent *Angelos* decision, which hold that federal tolling doctrine applies to state statutes of limitation in 10b–5 actions. Indeed, the court goes on to apply that doctrine to the facts presented in *Norris,* though it ultimately found them to be unconvincing in that case. This Court is at a loss as to what district courts in this circuit are to make of this. In one stroke, the *Norris* opinion suggests continued adherence to the old rule while hinting imminent reversal for any district court which dares to do so.

Faced with this confusion, we feel limited by the still-binding precedent established in cases such as *Suslick* and, more recently, *Angelos.* Accordingly, qualified by this preamble, we proceed on the assumption that it is still the law of this circuit that in 10b–5 cases federal courts are to apply federal tolling rules to the most analogous state statute of limitations.

█ Federal courts recognize two types of fraudulent concealment which justify the tolling of a state statute of limitations in 10b–5 securities fraud litigation. First, the limitations period may be tolled where the fraud goes undiscovered even though the defendant does nothing to conceal it, so long as the plaintiff alleges and proves that he or she remained unaware of the fraud without any fault or want of diligence on his or her part. *Angelos,* 815 F.2d at 456 (citing other Seventh Circuit cases). The plaintiff bears the burden of showing his or her reasonable diligence. *Id.* Second, the statute of limitations may be tolled if the plaintiff alleges and proves that the fraud went undiscovered because the defendant took affirmative steps to conceal the fraud after committing it. *Id.* at 456 n. 4. If the plaintiff successfully proves active concealment, the statute is tolled until the date of actual discovery. *Id.*

It is clear that since Geeting relies on the oral agreement as the relevant event with respect to the sale of the JSP stock and he has always claimed that he has been an owner of such stock since December 1979, Geeting Aff. at ¶ 5, that that is the point when, in the absence of circumstances indicating fraudulent concealment, the statute began to run. Thus, absent the benefit of tolling, Geeting has not complied with the applicable limitations period. Defendants base this part of their summary judgment motion on the statute of limitations, arguing in the alternative that (1) this suit was filed outside the three year period; (2) there was no active fraudulent concealment; (3) a person acting with due diligence would have discovered any fraud which might have occurred well before September 9, 1983 (three years before Geeting filed this suit); and (4) the statute of repose in Illinois bars any action beyond five years from the date of sale notwithstanding valid justifications for tolling. Geeting counters with arguments that he acted diligently and that even if he did not, the defendants continued to represent to him that he would be receiving the stock he purchased until May 1986, thus constituting fraudulent concealment. Finally, he maintains that this Court need not adhere to the statute of repose and that even if we hold otherwise, that repose period does not apply in this case because it was enacted by virtue of a recent amendment to the Illinois statute which did not become effective until January 1, 1986.

### 1. Statute of Repose

█ We first turn to the issues respecting the statute of repose because if there is an absolute five-year bar to Geeting's action, we need not reach the fraudulent concealment questions. The question of whether a federal court need carry over a statute of repose as well as a statute of limitations from the forum state appears to be an issue with little history. Statutes of repose differ from statutes of limitations in that they establish a precise period beyond which, notwithstanding any fraudulent concealment or discovery rules, an action is barred. *Anibaldi v. Sunbeam Corp.,* 651 F.Supp. 1343, 1345 (N.D.Ill.1987) (Duff, J.). Often, as, for example, in the case of the Illinois products liability statute of repose,

they are treated as a substantive element of a cause of action. *Id.; Thornton v. Mono Manufacturing Co.*, 99 Ill.App.3d 722, 726, 54 Ill.Dec. 657, 660, 425 N.E.2d 522, 525 (2d Dist.1981). Statutes of limitation are more procedurally oriented than repose statutes, although both promote similar interests in handling litigation in a timely manner which does not prejudice litigants on either side of the table.

■ Few courts have confronted the question of whether the general rule requiring federal courts to apply federal equitable tolling principles to 10b–5 cases extends to statutes of repose as well as statutes of limitations. Those that have broached the issue have differed. In *Morley v. Cohen*, 610 F.Supp. 798 (D.Md.1985) and *Vosbikian v. Wasserstrom*, [1986–1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,709 (E.D.Pa. Jan. 11, 1986) [Available on WESTLAW, DCT database], two district courts held that statutes of repose contained in the state blue sky law limitation statutes acted to absolutely bar 10b–5 claims in federal court. However, in *Estate of Dearing v. Dearing*, 646 F.Supp. 903 (S.D.W.Va.1986), another district court found that the federal interest in regulating fraud in the sale of securities was an important policy which required the application of federal tolling rules, even if such application allowed a claim to survive beyond the state-created repose period. Furthermore, in a case relied on by the *Dearing* court, another court in the district in which *Vosbikian* was decided concluded that notwithstanding the Pennsylvania blue sky law's tolling and repose provisions, such a tolling provision could not "preclude application of the federal equitable tolling doctrine to the fixed limitation period set out in the state statute." *Kirschner v. Cable/Tel. Corp.*, 576 F.Supp. 234, 240 (E.D.Pa.1983).

After considering the federal policies and the interplay between state and procedural rules and federal securities law, we hold that the position of the courts in *Dearing* and *Kirschner* is the correct one. The old version of ¶ 137.13D set forth a three-year

limitations period and did not explicitly permit tolling. Nonetheless, the Seventh Circuit repeatedly applied federal tolling rules to extend the three-year period based on the importance of federal policy in curtailing securities fraud. *See, e.g., Tomera v. Galt*, 511 F.2d 504 (7th Cir.1975). Indeed, it has been suggested that the old version of ¶ 137.13D may itself have been a statute of repose to which federal tolling principles had been applied. *Norris v. Wirtz*, 818 F.2d 1329, 133 n. * (7th Cir.1987). In our view, there is little difference in the general application of equitable tolling principles to a statute of limitations and application of those same principles to extend a cause of action beyond a repose period. Both applications promote the overriding policies of federal securities law notwithstanding a state legislature's determination of the otherwise appropriate period in which a state plaintiff may bring suit.

Furthermore, we are unpersuaded by the analyses set forth in *Morley* and *Vosbikian*. In the latter, the court reasoned that because the state limitations statute incorporated its own tolling doctrine, application of the federal equitable tolling doctrine would be, in effect, a failure to faithfully apply the most analogous state statute of limitations. *Vosbikian*, [1986–1987 Transfer Binder] Fed.Sec.L.Rep. at ¶ 92,709. To the contrary, to apply the state statute of repose as an absolute bar to a federal securities action would be to abandon the well-settled principle, acknowledged by the *Vosbikian* court, that federal law determines when the state law limitations period begins to run. *See Suslick*, 741 F.2d at 1004; *Tomera*, 511 F.2d at 509. Equally unpersuasive is the *Morley* court's analysis that because the Maryland blue sky law's statute of repose closely resembles a separate repose provision of the 1933 federal securities statute [4] (not applicable to 10b–5 actions, which grew out of the 1934 securities act), that absolute limitation should be imposed on 10b–5 plaintiffs notwithstanding the federal policy of equitable tolling in the case of fraud. *Morley*, 610 F.Supp. at

---

**4.** *See* 15 U.S.C. § 77m (1982).

820.[5] Like the court in *Vosbikian,* the *Morley* court was concerned that the state statute of limitations would be rendered meaningless by applying federal tolling principles. That is simply not the case with the Illinois statute, because in the absence of circumstances justifying tolling, the three-year period would still apply.

In referring to state law for an analogous statute of limitations, federal courts must not be overly concerned with slavish compliance with every procedural nuance contained in those statutes. As the Seventh Circuit instructed in *Tomera,* federal courts should adopt the limitations period itself, but "[t]his is the full extent of state law influence." 511 F.2d at 509. "The nature of the state statute is relevant only so far as it influences the question of whether it is analogous to the federal cause of action." *Dearing,* 646 F.Supp. at 908. We recognize that while state legislatures may determine that for the purposes of state law a repose period may be appropriate, those determinations need not influence the policies of federal securities litigation. Moreover, as between the state's interest in repose and federal concerns in addressing securities fraud, the latter must prevail since it is a federal cause of action brought in federal court which is at issue. Thus, we find that federal equitable tolling principles apply in 10b–5 actions even in the case where the most analogous state limitations statute also contains a statute of repose. Thus, the five-year absolute repose period contained in Ill.Rev.Stat. ch. 121½, ¶ 137.13 D (1985) does not bar Geeting's action.

2. Federal Equitable Tolling Doctrine

■ Having determined that the Illinois statute of repose does not completely bar Geeting's action, we next need to discuss whether he has pled and provided sufficient information to survive summary judgment with respect to fraudulent concealment.

Because we find that there are a host of genuine issues of material fact regarding fraudulent concealment, we must deny the defendants' summary judgment motion.

As we have already stated, the statute of limitations is subject to tolling under federal law if (1) the fraud goes undiscovered even though the defendant does nothing to conceal it, so long as the plaintiff alleges and proves that he or she remained unaware of the fraud without any fault or want of diligence on his or her part or (2) the plaintiff alleges and proves that the fraud went undiscovered because the defendant took affirmative steps to conceal the fraud after committing it. *Angelos,* 815 F.2d at 456 & n. 4. The plaintiff bears the burden of showing his or her reasonable diligence in the first case and of showing active concealment in the second. *Id.* If the plaintiff successfully proves active concealment, the statute is tolled until the date of actual discovery. *Id.*

Here, we find that there is sufficient evidence of either Geeting's due diligence or active concealment on the defendants' part to at least create a triable fact issue on the tolling question. Geeting alleged that he repeatedly requested over an extended period that the defendants provide him with stock certificates evidencing his percentage of the shares in JSP in return for his $30,000 payment. Complaint, ¶ 18b. He further alleged that the defendants misled him by participating in the negotiations for a written stock purchase agreement. *Id.* at ¶ 16, 17. Furthermore, he asserted that from late 1980 until early 1986, the defendants continually advised him not to worry and that he would receive his JSP stock as well as a return on his investment. *Id.* at ¶ 18c.

Geeting has presented some evidence to bolster these allegations. He testified that he asked Jerome about his stock in different conversations beginning in late 1980 and that Jerome assured him that every-

---

**5.** We acknowledge that various provisions of the federal securities acts explicitly create repose periods, and that the *Norris* court presents a forceful argument for their extension to 10b–5 actions. *Norris,* 818 F.2d at 1332–33. Nevertheless, that discussion is really premised solely on the policy of uniformity such an application would produce. *Id.* The court did not address the implications of a state statute of repose as played against federal tolling rules. *Id.* at 1333 n. *.

thing was taken care of. Geeting Dep. at 249–50. There is also evidence in the record that from late 1979 until early 1986 Jerome represented to Geeting that Geeting was a JSP shareholder and that Jerome never said anything to the contrary. Geeting Aff. at ¶ 20. Furthermore, Geeting presents the affidavits of two people who declare that Jerome said on numerous occasions during the relevant period that Geeting was a JSP stockholder. Affidavit of David W. Geddes, ¶ 6; Affidavit of Michael Heffernan, ¶ 4.[6] Geeting also testified at his deposition that Jerome told him that Geeting owned the stock and that the certificates were being held by Jerome's attorneys. Geeting Dep. at 249–50. Furthermore, unlike the plaintiff in *Norris,* Geeting did not have access to documents which would have allowed him to objectively verify the fraud or to put him on notice of the need for further inquiry (which he undertook anyway).

The main piece of evidence on which the defendants rest their contention that Geeting did not act with due diligence and that he had knowledge of any possible securities fraud action more than three years before filing this suit is a letter written by Geeting to Jerome on February 7, 1983. *See* Defendants Exh. 28. In this letter, Geeting details some of the transactions between himself and Jerome (many of which extend beyond the transactions relevant to this suit) and complains about his inability to show any results from his investments. In the phrase on which defendants heavily rely, Geeting writes that after six years of dealings, *"I cannot even claim shares of stock in JSP* or a percentage of any spinoff deals to validate the intentions of the funds which I invested with you." *Id.* at 2 (emphasis added). The defendants argue that this language is tantamount to an admission by Geeting that he has no *legal* claim to any stock interest in JSP. To put

it charitably, this contention is simply preposterous. First, nothing in the letter indicates that Geeting was prepared to give up any interest in JSP to which he believed he was entitled. It is reasonable to infer that in stating that he could not even "claim" his JSP shares, Geeting was merely complaining that he had nothing to show for the large amounts of money he had apparently provided to JSP. This is the most reasonable construction of the letter, even without applying the standard that we view all facts in the light most favorable to Geeting as the non-moving party. Furthermore, at at least one other point in the letter, Geeting refers to his $30,000 payment as having been "invested" as distinguished from his $50,000 "loan." *Id.* at 1.[7]

While we make no finding regarding the merits of Geeting's claim of fraudulent concealment, we conclude that on the record before us there is sufficient evidence from which a reasonable jury might find that the defendants undertook to fraudulently conceal the fact that Geeting was destined never to receive his JSP stock. It is not the function of this Court on a summary judgment motion to weigh the evidence submitted on these claims, but merely to evaluate whether there is a genuine issue of fact suited for resolution by trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The tolling issue demonstrates that this is clearly a case where factual disputes relevant to the ultimate outcome abound, and we hereby deny the defendants' summary judgment motion on this aspect of the complaint as well.

As a final matter, we deny the defendants' motion for sanctions under Fed.R. Civ.P. 11. It should be self-evident that because we find that there are genuine issues of fact regarding the material issues

---

**6.** Defendants argue that the Geddes and Heffernan affidavits are irrelevant and should be stricken because they do not affirmatively state that Geeting was aware of these representations by Jerome. We disagree. While it is true that no evidence links these statements with any particular reliance on Geeting's part, the statements may nevertheless be circumstantial evidence that Jerome undertook a general scheme

to lull Geeting into believing that he was indeed a JSP shareholder.

**7.** We note that the defendants relied on this exhibit in their contention that there was no "agreement" as well. The argument was equally unpersuasive there.

in this litigation, there is, at least on the record presented to us, sufficient grounding in fact to sustain Geeting's suit at this time.

## IV. CONCLUSION

For the foregoing reasons, we find that there are genuine issues of material fact with respect to the existence of an oral and enforceable stock purchase agreement and with respect to the extent to which the statute of limitations may be tolled. Accordingly, the defendants' motion for summary judgment on Count I is denied. Their motion as to the pendent state law claims in Counts II–VI is also denied by virtue of the survival of Geeting's federal claim. Finally, defendants' motion for Rule 11 sanctions is denied. It is so ordered.