**Keith HERNANDEZ, Plaintiff,**

v.

**John H. CHILDERS, Talent Services, Inc., Talent Network, Inc., Defendants.**

**No. 89 C 1418.**

United States District Court,
N.D. Illinois, E.D.

May 1, 1990.

George W. Gessler, Terence E. Flynn, Gessler, Flynn, Fleischmann, Chicago, Ill., for Keith Hernandez.

Robert K. Blain, Mitchell Bryan, Altheimer & Gray, Chicago, Ill., for John H. Childers.

## ORDER

NORGLE, District Judge.

Before the court is defendants' motion to dismiss. For the following reasons, it is granted in part and denied in part.

On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

Plaintiff Keith Hernandez is a professional baseball player. Defendant John M.

Childers is the President and major owner of co-defendant Talent Services, Inc. ("TSI") and co-defendant Talent Network, Inc. ("TNI"). In 1976, Hernandez retained Childers as his agent. At that time, Hernandez entered into three contracts. Under the Contract Negotiation Agreement, TSI was to handle Hernandez's contract negotiations with professional athletic teams. Under the Merchandising Agreement, TNI was to represent Hernandez in various income producing opportunities including endorsements, licensing, and appearances. Finally, under the Business Management Agreement, TSI was to manage Hernandez financial affairs.

Hernandez's claims arise from his purchase of investment units in a limited partnership known as Sealock (Israel) and Co. ("Sealock"). In late 1979, Childers contacted Hernandez and informed him of an opportunity to invest in Sealock. Childers told Hernandez that funds invested in Sealock would be used for the research and development of meat packing machinery. Childers allegedly promoted the investment as one providing an outstanding opportunity to shelter income from taxes and simultaneously to obtain large profits. In addition, Childers allegedly told Hernandez that he had obtained whatever legal and tax opinions that were necessary to insure that the investment was sound. During 1980, 1981, and 1982, Childers, after receiving authorization from Hernandez, invested a total of $245,000 of Hernandez's money on Sealock.

In 1983, the IRS began an investigation into the entire scheme of Israeli limited partnerships, including Sealock. Hernandez claims he first learned of the IRS challenge to his own Sealock investment in 1986. In September, 1987, the Seventh Circuit held in *Levin v. Commissioner,* 832 F.2d 403 (7th Cir.1987), that the tax shelter features of Sealock were improper. Consequently, the IRS disallowed the Sealock tax deductions and imposed penalties. As a result, Hernandez claims he lost his entire investment and incurred significant tax liabilities and penalties totalling $830,000, in addition to the loss of $245,000 already invested in Sealock.

Hernandez's complaint centers around a series of alleged misrepresentations and omissions by Childers regarding the Sealock investment. Among the alleged misrepresentations is Childers' statement of the fundamental purpose of Sealock. Hernandez states that although Sealock was promoted as a tax shelter and an income producing investment, it was never meant to be anything but a tax loss. Hernandez also alleges that Childers assured him that the investment had been favorably reviewed by lawyers and accountants when in fact no such evaluation ever took place. In addition, Childers allegedly did not disclose either that he stood to profit if Hernandez invested, that there were the tax risks involved, or that the Sealock promoters had conflicts because of their ownership of the only firms that were to benefit from the venture.

On February 21, 1989, Hernandez filed a seven count complaint consisting of federal securities law and various state law claims. Count I is a common law breach of fiduciary duty claim; Count II is a common law fraud claim; Count III is a claim for violation of Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934; Count IV is a claim for violation of Section 12(2) of the Securities Act of 1933; Count V is a claim for violation of section 17(a) of the Securities Act of 1933; Count VI is a common law negligence claim; Count VII is a common law breach of contract claim. These will be addressed seriatim.

*Section 10(b) and Rule 10b–5 claims*

■ Defendants move to dismiss Hernandez's Section 10(b) and Rule 10b–5 claims in Count III as barred by the applicable statute of limitations. As no federal limitations provision governs claims brought under Section 10(b) or Rule 10b–5, federal courts look to the most analogous limitations period controlling in the state in which the action is brought. *See Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 456 (7th Cir.1987). The Seventh Circuit has held that the most analogous statute of limitations in Illinois is the three year period prescribed by the

Illinois Securities Act, Ill.Rev.Stat. ch. 121½, ¶ 137.13(D). *See Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1004 (7th Cir.1984).

Under Section 137.13(D) of the Illinois Securities Act, the three year statute of limitations period begins to run "from the date of sale." Ill.Rev.Stat. ch. 121½, ¶ 137.13(D). The parties in this case disagree as to when Hernandez "purchased" the securities in question and, therefore, when the limitations period began to run. Defendants argue that in Section 10(b) and Rule 10b–5 actions the purchase of a security pursuant to a written agreement occurs on the date when the agreement becomes binding on the purchaser, rather than any future date or dates when the agreement unconditionally requires payment of the purchase price. Therefore, defendants assert, the Sealock securities were purchased when Hernandez signed the Subscription Agreement to Sealock and his Letter of Understanding to DMC, Ltd. which provided research and development services regarding Sealock. Under the terms of the Subscription Agreement, Hernandez was to make an initial payment and then to pay the balance of the purchase price at future dates which were to be determined. (Subscription Agreement ¶ 1–2, 4). Both of these documents were dated September 15, 1980. Consequently, defendant argues, the limitations period began to run on that date.

Hernandez acknowledges that Childers sent him the Sealock Investment documents in November or December of 1979. Although Hernandez states that he promptly returned these documents to Childers, he does not indicate when he signed them. Rather, Hernandez instead emphasizes that after his initial investment in Sealock he was required to provide additional capital contributions in 1994. Hernandez, relying upon *Goodman v. Epstein*, 582 F.2d 388, 414 (7th Cir.1978), contends that calls for additional capital contributions entail new investment decisions, thus precluding the contract execution date or initial invest-

ment from being the "purchase" date from whence the statute of limitations would run.

Hernandez's reliance on *Goodman* is misplaced. Although the *Goodman* Court held that additional capital contributions constituted separate investment decisions and, therefore, separate purchases of securities, *Goodman* is easily distinguishable. In *Goodman*, the plaintiffs were limited partners in a real estate development limited partnership. Under the terms of the partnership agreement, the plaintiffs were required to provide additional contributions of capital upon call for such contributions by the general partners. 582 F.2d at 412. The plaintiffs contended that those subsequent capital contributions constituted additional purchases of securities within the meaning of Section 10(b) and Rule 10b–5, even though they were obligated to make those contributions under the terms of the partnership agreement. The Seventh Circuit held that the additional contributions did constitute separate purchases of securities because the plaintiffs faced a separate investment decision each time a call was made. This was because under Illinois law, they had a right to relieve themselves of their obligations to provide additional capital if the facts showed that the partnership was unprofitable. Ill.Rev.Stat. ch. 106½, ¶ 32(1)(e)); 582 F.2d at 413.[1]

Unlike the plaintiffs in *Goodman*, Hernandez is obligated to provide additional capital and has no legal right to relieve himself of this obligation. Paragraph 41 of the complaint states that "[a]n additional payment is due in January, 1994 and the plaintiff is obligated to make that payment." Accordingly, the plaintiff's obligation with respect to the purchase of the securities has not yet been completed. Therefore, Hernandez is not making a separate investment decision. Rather, he is fulfilling his contractual obligation. In *Goodman*, the Seventh Circuit was careful to distinguish a situation, such as this, where the purchaser would have "no legal

---

**1.** There is no basis in the complaint for the court to infer that such an option was open to Hernandez.

alternative to performing the contract ...." 582 F.2d at 412. Because Hernandez has no legal alternative to providing an additional contribution in 1994, no separate investment decision will be made and, thus, the contribution does not constitute the purchase of a security. Rather, Hernandez's only "purchase" of securities occurred on September 15, 1980, the date of the Subscription Agreement and the date upon which the agreement became binding. The limitations period began to run on that date.

■ Since Hernandez purchased the Sealock units on September 15, 1980 (the date of the Subscription Agreement and of the Letter of Understanding), the limitations period expired and his Section 10(b)–5 claim became time-barred in September 15, 1983, in the absence of factual allegations which would toll the limitations period. *Robin v. Doctors Officenters Corp.*, 686 F.Supp. 199 (N.D.Ill.1988). Although federal courts look to state law for the period of limitations, they remain bound by federal tolling principles. *See Geeting v. Prizant*, 664 F.Supp. 343, 347 (N.D.Ill.1987). Extended tolling, as is sought by Hernandez, is disfavored in this circuit. *See John v. Phelps*, 713 F.Supp. 1161, 1164 (N.D.Ill. 1989) *citing Norris v. Wirtz*, 818 F.2d 1329, 1333–34 (7th Cir.1987).

Federal courts recognize two types of fraudulent behavior which justify the tolling of a statute of limitation in securities fraud litigation. *See Angelos*, 815 F.2d at 456; *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir.1975); *John*, 713 F.Supp. at 1164; *Geeting*, 664 F.Supp. at 348. In the first type, the limitations period may be tolled where the fraud goes undiscovered even though the defendant does nothing to conceal it, so long as the plaintiff alleges and proves that he remained unaware of the fraud without any fault or want of diligence on his part. *Geeting*, 664 F.Supp. at 348. The plaintiff bears the burden of showing his reasonable diligence. *Id.* In the second type, the statute of limitations may be tolled if the plaintiff alleges and proves that the fraud went undiscovered because the defendant took affirmative

steps to conceal the fraud after committing it. *Id.* If the plaintiff successfully alleges and proves active concealment, the statue is tolled until the date of actual discovery. *Id.* In this case, Hernandez claims that both tolling provisions are applicable. We disagree.

■ As to the first tolling provision, Hernandez alleges that in 1979, Childers contacted him and told him of the Sealock investment opportunity. The investment was allegedly described as an outstanding tax shelter that would also reap huge profits. Beginning in September, 1985, and periodically for the next three years, Hernandez had allegedly made numerous inquiries to Childers regarding the investment, but these questions were answered generally or deflected by information about other investments. Hernandez also alleges that although he requested documents regarding the investment, such documents were never sent to him. Hernandez states that in late 1986, he personally received some information about the IRS challenge to his investment. In September 1988, Hernandez allegedly learned that the tax shelter features of his investment had been disallowed.

When Childers would not answer the questions Hernandez posed to him beginning in September of 1985 and failed to provide him with documents regarding his investment, Hernandez was put on inquiry notice that perhaps Childers had acted improperly in investing his money in Sealock. "At the very least, these circumstances should have aroused suspicion or curiosity on the part of plaintiff." *Hupp v. Gray*, 500 F.2d 993, 996–997 (7th Cir.1974) (*citing Morgan v. Koch*, 419 F.2d 993, 998 (7th Cir.1969)). Although Hernandez alleges that Childers provided inadequate responses to his "numerous inquiries," Hernandez does not allege that he contacted an attorney, an accountant or anyone else regarding the propriety of Childers' conduct. Rather, he merely accepted Childers responses to his requests and took no further action.

Hernandez also argues that Childers had established himself as a trusted business

advisor and that due to his fiduciary position, Hernandez lacked any reason to question Childers' investment activity. The mere existence of a fiduciary relationship, however, is insufficient to relieve plaintiff of the necessity to exercise due diligence in order to invoke tolling. *Hupp*, 500 F.2d at 997. Rather, open evasion by a fiduciary in response to numerous inquiries puts one on notice that something may be amiss.

In claiming that he exercised reasonable diligence in uncovering Childers' alleged fraud, Hernandez states that he lacked the means and resources to investigate Childers' actions regarding the investment. Hernandez states that he was unsophisticated about securities. Such a lack of sophistication, however, is not sufficient to warrant tolling of the statute of limitation. The time to file suit begins to run when the investor either knows or in the exercise of reasonable diligence could have discovered the facts on which the suit is based *Norris*, 818 F.2d at 1334. "The investor need not actually know the facts or appreciate their significance; the 'could have discovered' branch of the test is objective." *Id.* Hernandez's lack of sophistication, therefore, is irrelevant. The statute begins to run when a reasonable person would have appreciated the need for further inquiry. *Id.* An objectively reasonable person would have appreciated the need for further inquiry when he was unable to obtain either responses to his questions or documents regarding Sealock from Childers. Hernandez proffers no basis for tolling between 1980 and September, 1985. Even assuming that the statute of limitation was tolled (did not expire in September of 1983 three years after the "purchase") Hernandez knew or should have known of his claim as of September, 1985. Therefore, any tolling ended and the three year limitations period expired in September of 1988, prior to when the date of this action.

Because Hernandez has not sufficiently alleged reasonable diligence in uncovering Childers' alleged fraud, his Section 10(b) and Rule 10b–5 claims filed more than three years after the date of purchase are time-barred, unless Hernandez can avail himself of the second tolling provision.

In order to invoke the second tolling provision, Hernandez must allege that Childers actively concealed the alleged fraud. To do so, Hernandez must specifically allege "some fraudulent action by the defendant, subsequent to the initial wrong, . . . ." *Gieringer v. Silverman*, 731 F.2d 1272, 1278 (7th Cir.1984); *See also Tomera*, 511 F.2d at 510 (*quoting Smith v. Blachley*, 198 Pa. 173, 47 A. 985 (1901) ("affirmative efforts to divert or mislead or prevent discovery of the original fraudulent act.")).

In an attempt to establish active concealment, Hernandez states that he asked Childers for information regarding his own IRS case, but that Childers responded by deflecting his questions with information about other potential investments. Simply providing answers that Hernandez considered unsatisfactory or evasive is not sufficient to allege active concealment. Specific affirmative efforts to conceal the fraud must be alleged. *Tomera*, 511 F.2d at 510. Evasiveness, once it becomes obvious, is the exact opposite of active concealment.

Finally, Hernandez's characterization of Childers' conduct as "concealing from [Hernandez] the facts pertaining to the IRS challenge," (Complaint ¶ 27), is simply a conclusion of law that the court is not required to accept. *Carl Sandburg Village Condominium Ass'n No. 1*, 758 F.2d at 207. Moreover, such a general allegation of a continuing scheme to defraud lacks the specificity needed to establish fraudulent concealment. *Fink v. Meserve, Mumper & Hughes*, No. 84 C 10382, Lexis slip op., at 5, 1986 WL 7049 (N.D.Ill. June 19, 1986).

Because he has not sufficiently alleged active concealment, Hernandez may not avail himself of the second tolling provision. Therefore, the 10(b) and Rule 10b–5 claims are time-barred and, accordingly, Count III is dismissed.

### 12(2) Claim

Defendants also seek to have Count IV, which alleges a violation of Section

12(2) of the Securities Act of 1933, dismissed on statute of limitations grounds. Section 13 of the 1933 Act prescribes the limitations period applicable to claims brought under Section 12(2). Under Section 13, a 12(2) claim must be brought within:

> one year after discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, (but) in no event .... more than three years after the date of sale.

*Flournoy v. Peyson*, 701 F.Supp. 1370, 1379 (N.D.Ill.1988). Unlike a 10(b) or 10b–5 claim, the doctrine of equitable tolling does not apply to the limitations period applicable to 12(2) claims. *Rosin v. ETX Petroleum Corp.*, No. 84 C 3579, Lexis slip op. at 3, 1985 WL 3502 (N.D.Ill., October 29, 1985) (*citing Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 968 (5th Cir.1981). Therefore, the three year limitations period is an absolute bar to a 12(2) claim. *Rosin*, No. 84 C 3589 at 3. Because Hernandez purchased the securities in 1980, he should have, with the exercise of reasonable diligence, discovered the alleged misstatements and omissions by late 1985. Since he did not file this suit within three years thereafter, his 12(2) claim is dismissed as time-barred.

*Section 17(a)*

■ Count V, which asserts a claim under Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), is likewise dismissed. The Seventh Circuit has refused to imply a private right of action under this statute. *See Schlifke v. Seafirst Corp.*, 866 F.2d 935, 942–43 (7th Cir.1989).

*Fiduciary Duty*

■ Defendants also seek to have Hernandez's breach of fiduciary duty claim dismissed on statute of limitations grounds. The Illinois statute of limitations applicable to a claim for breach of fiduciary duty is five years. Ill.Rev.Stat. ch. 110, ¶ 13–205. The limitations period begins to run when the plaintiff "discovers or reasonably should have discovered the breach of fiduciary duty." *Mitchell v. Simms*, 79 Ill.

App.3d 215, 220, 34 Ill.Dec. 536, 540, 398 N.E.2d 211, 215 (1st Dist.1979).

In his complaint, Hernandez states that in about September, 1988, he learned for the first time that the "tax shelter features of Sealock were improper and that the entire venture was an abject failure." (¶ 19). Presumably, it was at this time that Hernandez discovered Childers' alleged breach of fiduciary duty. Since Hernandez filed suit in February, 1989, less than five years later, the suit was timely filed unless Childers can show that Hernandez should reasonably have discovered the breach of fiduciary duty more than five years earlier. *Id.* Childers claims that in his complaint Hernandez admits having knowledge of the IRS challenge by July, 1983 and that this knowledge furnished him with a basis to assert the breach of fiduciary duty claim at that time. Consequently, Childers argues, Hernandez's claim asserted five and one half years later is untimely.

We do not agree with Childers' assertion that Hernandez admits having knowledge of the IRS challenge by July, 1983. Childers points to paragraph 18 of Hernandez complaint which states that:

> Throughout the time the tax case [the IRS challenge] was pending, virtually all information that was furnished by those defending the case was sent to Childers as plaintiff's agent and in spite of plaintiff's inquiries, it was not then forwarded to him. Throughout that period, Childers ... did not provide any alarming information about their case.

Childers claims that the above allegation supports his contention that Hernandez knew of the IRS challenge in 1983, i.e., from the time of its inception.

Although Hernandez admits inquiring about the 1983 IRS challenge, he does not admit having done so as early as 1983. Childers claims that the allegation shows that Hernandez inquired about the case throughout the time it was pending and that he could not do so unless he knew that the matter was pending since its inception in 1983.

However, what Hernandez does allege is that *Childers* was sent material concerning the case throughout the time it was pending. Although he says he inquired about the case, he does not say that he did so as early as 1983 and throughout the time it was pending. In paragraph 18 of his complaint, Hernandez alleges that in 1986, he first learned of the 1983 IRS challenge. Upon a motion to dismiss, such a factual allegation must be taken as true. *St. Joseph's Hospital,* 788 F.2d 411. September of 1985, when Hernandez began to inquire about the status of the Sealock investment and Childers began "ducking" his inquiries, was when Hernandez should have suspected a possible breach of fiduciary duty. It is then, in late 1985, that Hernandez should have "reasonably discovered the breach of fiduciary duty." *Mitchell,* 79 Ill.App.3d at 220, 34 Ill.Dec. at 540, 398 N.E.2d at 215. Therefore, because Hernandez filed suit in February 1989, less than five years later, his claim of breach of fiduciary duty is not time-barred.

■ In addition to contending that the breach of fiduciary duty claim is time-barred, Childers contends that the claim fails to state a claim for punitive damages. Under Illinois law, punitive damages may be awarded for an intentional breach of fiduciary duty. *Obermaier v. Obermaier,* 128 Ill.App.3d 602, 610, 83 Ill.Dec. 627, 470 N.E.2d 1047 (1st Dist.1984). In order to warrant an award of punitive damages, the alleged breach of fiduciary duty "must be characterized by wantonness, oppression or other circumstances of aggravation." *In re Estate of Wernick,* 127 Ill.2d 61, 83–84, 129 Ill.Dec. 111, 121, 535 N.E.2d 876, 886 (1989).

In paragraph 25 of his complaint, Hernandez alleges that Childers' actions that are the source or Count I were "intentional, wilfully and deliberately perpetrated, and accomplished through the working of undue influence...." Citing *Mijatovich v. Columbia Savings & Loan Ass'n,* 168 Ill. App.3d 313, 315–16, 119 Ill.Dec. 66, 68–69, 522 N.E.2d 728, 730–31 (1st Dist.1988), Childers contends that conclusory allegations of wantonness, malice or oppression

are insufficient to state a claim of punitive damages. Because Hernandez's allegations are conclusory, Childers contends, they are insufficient to state a claim of punitive damages.

*Mijatovich* is simply not on point. That case, did not consider awarding punitive damages for an alleged breach of fiduciary duty. The court stated that, "here, the relationship of the parties was that of a creditor and debtor, and no fiduciary duty exists." 119 Ill.Dec. at 69, 522 N.E.2d at 731. Because Hernandez has alleged an intentional, willful and deliberate breach of fiduciary duty accomplished by means of undue influence he has sufficiently stated a claim for punitive damages.

*Common Law Fraud Claim*

■ Childers seeks to have Hernandez's common law fraud claim in Count II dismissed on statute of limitations grounds. The same five year statute of limitations applicable to the breach of fiduciary duty claim is applicable here. Ill.Rev.Stat. ch. 110, ¶ 13–205; *Knox College v. Celotex Corp,* 88 Ill.2d 407, 414, 58 Ill.Dec. 725, 728, 430 N.E.2d 976, 979 (1981). The limitations period commences "when plaintiff knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Knox College,* 88 Ill.2d at 416, 58 Ill.Dec. at 729, 430 N.E.2d at 980.

Hernandez's fraud claim is also not time-barred. Because Hernandez knew or should have known of the alleged fraud in September of 1985 when he began inquiring about the Sealock investment, the statute of limitations began to run at that time. Therefore, because he filed suit less than five year later, the fraud claim is not time-barred.

■ Childers also seeks to have the fraud claim dismissed for failure to state a claim. He states that under Illinois law a fraud claim must contain an allegation of a "misrepresentation of an existing material fact coupled with scienter, deception, and injury...." *Steinberg v. Chicago Medical*

*School,* 69 Ill.2d 320, 332–33, 13 Ill.Dec. 699, 705–09, 371 N.E.2d 634, 640–44 (1977).

The *Steinberg* Court stated:

"A misrepresentation in order to constitute fraud must consist of a statement of material fact, false and known to be false by the party making it, made to induce the other party to act, and, in acting, the other party must rely on the truth of the statement."

13 Ill.Dec. at 706, 371 N.E.2d at 641.

In this case, Hernandez claims that Childers made numerous statements of material fact regarding Sealock that were false and known by Childers to be false. Among these statements were those concerning reviews of the nature of the investment by accountants and lawyers. Hernandez also claims that the statements were made to induce him to invest in Sealock and that he relied on them in deciding to do so. Therefore, Hernandez has sufficiently pleaded fraud and Count II will not be dismissed for failure to state a claim.

■ Childers also seeks dismissal of Count II for failure to plead fraud with specificity as required under Rule 9(b). Rule 9(b)'s requirement that "the circumstances constituting fraud .... be stated with particularity" must be read together with the general requirements of Rule 9(a) that plaintiff need only plead a "short and plain statement if the claim" showing their entitlement to relief. This court has held that "... a complaint is considered sufficient if it set forth the time, place, particular contents of the false representation, the identity of the party making the misrepresentation, and the consequences of the misrepresentation." *Capalbo v. PaineWebber, Inc.,* 672 F.Supp. 1048 (N.D.Ill.1987).

The purpose of Rule 9(b) is to ensure that defendants receive fair notice of the particular circumstances underlying plaintiff's fraud claims. *Tomera,* 511 F.2d at 508. In alleging the time period during which the misrepresentations and omissions are alleged to have been made, the plaintiff may allege an approximate time frame. *Onesti v. Thomson McKinnon Securities, Inc.,* 619 F.Supp. 1262 (N.D.Ill. 1985).

In the present case, Hernandez has sufficiently set forth the time frame of the alleged misrepresentations and omissions. They are set forth and detailed throughout the complaint. The allegations also identify Childers as the party who made the misrepresentations and as the person responsible for the omission. Finally, the allegations sufficiently allege that Hernandez suffered monetary loss as a consequence of the alleged conduct. Therefore, Count II will not be dismissed for failure to plead fraud with specificity as required by Rule 9(b).

*Common Law Negligence Claim*

■ Hernandez's common law negligence claim in Count VI is barred by the applicable statute of limitations. The same five year statute of limitations applicable to the common law fraud claim on Count II and Breach of fiduciary duty claim on Count I is applicable to the negligence claim in Count VI. *See* Ill.Rev.Stat. ch. 110, ¶ 13–205. Under Illinois law, where an alleged tort arises from a breach of a contractual duty, the limitations period commences "at the time the contract is breached, not at the time the damage is sustained or discovered." *West America Ins. Co. v. Sal E. Lobianco & Son, Inc.,* 69 Ill.2d 126, 12 Ill.Dec. 893, 896, 370 N.E.2d 804, 807 (1977); *Stevens v. O'Bryant,* 74 Ill.App.3d 239, 30 Ill.Dec. 170, 173, 392 N.E.2d 935, 938 (3rd Dist.1979). Therefore, the date when plaintiff discovered his injury is not relevant, and the limitations period is not tolled until he does so. *Stevens,* 74 Ill. App.3d at 243, 30 Ill.Dec. at 173, 392 N.E.2d at 938.

According to the allegations contained in Count VI, Childers, TSI, and TNI were negligent in the handling of Hernandez's business affairs and in investing his funds. (¶ 54). This very conduct complained of also amounted to a breach of the Business Management Agreement. Thus, the breach occurred in 1979, when defendants suggested the Sealock investment to Hernandez, or in 1980, when defendants invested Hernandez's money in Sealock. Because the negligence claim in Count VI was

not filed until 1989, it is untimely and, therefore, dismissed.

### Breach of Contract Claims

■ The breach of contract claim in Count VII is dismissed *for failure to state a* claim against defendant Childers. Count VII alleges a breach of the Business Management Agreement. Under Illinois law, "where the identity of the principal for whom an agent acts is sufficiently disclosed to a third party, then the principal and not the agent is liable on the contract." *Powers v. Warner Bros. Records, Inc.,* 411 F.Supp. 747, 748 (N.D.Ill.1976) (*citing Valkenburg K-G v. The S.S. Henry Denny,* 295 F.2d 330, 333 (7th Cir.1961)).

In the present case, the Business Management Agreement sufficiently disclosed to Hernandez that TSI was the principal on whose behalf Childers was acting as an agent in his role as president of TSI. The agreement was typed on TSI stationery and identified TSI and Hernandez as the parties to the agreement. The agreement was signed by Childers on behalf of TSI. Although Hernandez alleges that Childers signed the agreement in an individual capacity, the document does not suggest that Childers signed the agreement in any capacity other than that of an agent of TSI. In fact, paragraph 57 of the complaint states that the Business Management Agreement was between Hernandez and TSI, not Hernandez and Childers. Therefore, only TSI and not Childers can be liable for any breach of the Business Management Agreement. Accordingly, Count VII is dismissed as to Childers for failure to state a breach of contract claim against him.

### Claims Against TNI

■ Defendants contend that counts II, III, IV, V, and VI do not allege any conduct on the part of TNI relating either to Hernandez's purchase of Sealock units, or to any advice Hernandez received from TNI or Childers as an agent for TNI concerning those securities. The court agrees.

Hernandez alleges that in all his actions relating to Sealock, Childers was acting individually and as an employee and agent of TSI and TNI. Upon examination of the Merchandising Agreement and the Business Management Agreement, we conclude that the Sealock Investment was covered by the Business Management Agreement which was between Hernandez and TSI and not the Merchandising Agreement which was between Hernandez and TNI.

Under the Merchandising Agreement, TNI agreed to counsel and assist Hernandez in the

> development, negotiation, organization and administration of all income-producing opportunities and activities as may be or became available to you as a result of your reputation as a professional athletes (e.g., licensing, endorsement, appearance, television, literary opportunities, movie and T.V. roles, etc.... ).

Because the Sealock Investment was not an income producing opportunity that became available to Hernandez as a result of his reputation as a professional athlete, it was not the type of opportunity contemplated by the Merchandising Agreement. As a result, Counts II, III, IV, V, and VI against TNI are dismissed.

### CONCLUSION

All claims against TNI are dismissed with prejudice. Count I, which alleges a breach of fiduciary duty against Childers, survives. Count II, which alleges common law fraud against the defendants, survives. Count III, which alleges violations of Section 10(b) and Rule 10b–5 against defendants, is dismissed. Count IV, which alleges violations of Section 12(2) against defendants, is dismissed.[2] Count V, which alleges violations of Section 17(a) against defendants, is dismissed with prejudice. Count VI, which alleges a claim for common law negligence against defendants, is dismissed with prejudice. Count VII, which alleges breach of contract, is dismissed with prejudice to the extent it is brought against

**2.** As to Counts III and IV, Hernandez is, of course, free to seek leave to amend to add

allegations which would support tolling.

Childers, but survives to the extent it is brought against TSI.

IT IS SO ORDERED.