996 F.2d 1219
 RICO Bus.Disp.Guide 8381
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joseph CALABRESE, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
 No. 92-2431.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 13, 1993.
Decided May 21, 1993.
 
 Before CUDAHY, FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 After a collision with an uninsured motorist Joseph Calabrese submitted to arbitration as required by his insurance contract. He lost, but he later discovered that one arbitrator was a frequent participant as the "neutral" third person in cases involving the insurer. He filed fraud claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. (1988), which the district court dismissed as barred by the statute of limitations. Calabrese appeals and we affirm the district court.
 
 I. Background
 
 2
 In 1984 State Farm Mutual Automobile Insurance Company ("State Farm") provided automobile insurance to the plaintiff. Prior to this appeal, he sought damages from State Farm in a number of legal forums. On January 13, 1986, pursuant to their insurance policy and Ill.Rev.Stat.1985, Ch. 73, Sec. 755a, the plaintiff obtained an arbitration hearing seeking damages resulting from a hit-and-run collision with an uninsured motorist. Pursuant to the statute, the plaintiff and State Farm each named one arbitrator, who in turn chose Arthur Sullivan as the third (and supposedly neutral) arbitrator. On March 6, 1987 by a two-to-one vote the plaintiff lost his arbitration claim because he had failed to establish liability. Undaunted, the plaintiff proceeded to file three consecutive lawsuits.
 
 
 3
 On June 4, 1987 the plaintiff filed in state court a vacatur of the award under the Uniform Arbitration Act. He alleged that Sullivan, who cast the deciding vote against him, had an undisclosed and continuing relationship with State Farm. See Calabrese v. State Farm Mut. Auto. Ins. Co., 543 N.E.2d 215 (Ill.App.1989). After an appeal from various dispositive motions in the trial court, the state court of appeals remanded the case, which is still pending. On December 30, 1988 the plaintiff filed an arbitration and legal malpractice action against Sullivan in the same state court. The court granted Sullivan's motion to dismiss, concluding that the Illinois Arbitration Act provided the exclusive remedy for judicial review of an arbitration award. Calabrese v. Sullivan, No. 88 L 24528 (Cook County Circuit Court, June 30, 1989). No appeal was taken. On February 18, 1992 the plaintiff filed this federal action against State Farm asserting two RICO and several state law claims.
 
 
 4
 At the outset of the federal litigation, the district court dismissed the complaint because the plaintiff had failed to distinguish between the defendant and the enterprise involved. In a hearing on a motion for reconsideration, the district court reviewed the plaintiff's amended complaint and noted that "the proposed Amended Complaint--reflects that the arbitration award was denied five years ago, which on its face poses limitations problems." The court ordered the plaintiff to file a lengthy RICO statement in support of his claims, which he did.
 
 
 5
 In his RICO statement, the plaintiff made the following assertions:
 
 
 6
 Plaintiff contends that the fraud has continued through the present day by virtue of the continued efforts by State Farm to enforce and uphold the originally obtained fraudulent award. Nonetheless, the act which was intended to complete the fraud upon Mr. Calabrese was the issuance of the arbitration award denying the uninsured motorist claim. That act was accomplished by the mailing of the award on March 6, 1987. The RICO complaint was filed in February of 1992 well within the 5 year statute of limitations.
 
 
 7
 The problem, of course, is that the statute of limitations for RICO actions is four, not five, years. Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143 (1987). The plaintiff does not contest the applicable limitations period. Rather, he concentrates his appeal on de-emphasizing his own statements to the district court and whether we should modify the method by which RICO claims accrue. The district court dismissed the proposed amended complaint and denied the plaintiff's motion for reconsideration,[1] concluding that no matter which accrual method applied, the plaintiff filed his RICO action too late. On appeal, he also asserts that State Farm fraudulently concealed information, thus tolling the statute of limitations.
 
 II. Discussion
 
 8
 In McCool v. Strata Oil Company, 972 F.2d 1452 (7th Cir.1992), we decided the question of when a civil RICO claim accrues. As a basic premise, the statute of limitations period begins to run "once there was a RICO violation and the plaintiffs knew or should have known that they were injured." Id. at 1464. Specifically, we held that
 
 
 9
 a RICO claim accrues when the plaintiff discovers her injury, even if she has not yet discovered the pattern of racketeering. There must, of course, be a pattern of racketeering before the plaintiff's RICO claim accrues, and this requirement might delay accrual until after the plaintiff discovers her injury.
 
 
 10
 Id. at 1465 (citations omitted). We also adopted the separate accrual rule and held that "a new cause of action under [civil] RICO arises on the occurrence of each separate injury, and a suit to recover for that injury must be brought within the limitations period." Id.[2] "[A] civil RICO claim depends on the existence of an injury: as in playground basketball, the rule is 'no blood, no foul.' In civil RICO, each wrongful act that causes injury is a new cause of action, a new foul." Id. at 1466. Thus, the key inquiry is when this plaintiff discovered his injury.
 
 
 11
 In this case the plaintiff admitted to the district court that the fraud injury was completed by "the issuance of the arbitration award denying the uninsured motorist claim" on March 6, 1987. At the very least, the plaintiff knew of the alleged fraud against him on June 4, 1987, when he sued State Farm in state court. Thus, the plaintiff's filing of his original complaint on February 19, 1992 was well over four years after his alleged injury. The plaintiff also admitted in his opening brief that "if the Statute of Limitations began to run when Appellant first discovered the 'injury' then his RICO claim is barred."[3] We agree. Because a RICO claim accrues when the plaintiff discovers his injury, 972 F.2d at 1465, Calabrese's admissions show that the alleged fraud occurred beyond the four year limitations period. See Agency Holding, 483 U.S. 143.
 
 
 12
 Discovery has continued regarding the ongoing June 4, 1987 complaint in state court. In light of State Farm's answers to certain interrogatories (not contained in the Record), the plaintiff argues that his RICO claims are timely because he did not discover that the fraud qualified as a RICO injury until November 15, 1990. This argument was rejected in McCool. RICO claims accrue notwithstanding when the alleged pattern of racketeering is discovered. "The pattern element of RICO gives rise to the cause of action, but is not the injury itself." 972 F.2d at 1465.
 
 
 13
 The plaintiff nevertheless uses this discovery to assert that State Farm fraudulently concealed facts which otherwise would have exposed RICO violations. McCool acknowledged that "equitable tolling may well delay the running of the RICO limitations period while a victim diligently investigates the possible existence and extent of a pattern of racketeering." Id. Such due diligence is not required, however, if a defendant is fraudulently concealing wrongful acts.[4]
 
 
 14
 [T]he statute of limitations is tolled if the fraud remained undisclosed because the defendant took additional affirmative steps after committing the fraud to keep it concealed. Here the plaintiff is relieved from his obligation to use diligence to discover the fraud. Where active concealment exists, the statute is tolled until there is actual discovery of the fraud.
 
 
 15
 Davenport v. A.C. Davenport & Son Co., 903 F.2d 1139, 1142 (7th Cir.1990) (citations omitted). Of course, the plaintiff's complaint must expressly plead active concealment of the fraud. Id., citing Hupp v. Gray, 500 F.2d 993, 997 (7th Cir.1974) ("conclusory assertion that plaintiff had been lulled into a sense of security by his fiduciary is insufficient to invoke the doctrine of fraudulent concealment"). See Tomera v. Galt, 511 F.2d 504, 510 (7th Cir.1975) ("affirmative efforts to divert or mislead or prevent discovery of the original fraudulent act").
 
 
 16
 In this case the plaintiff alleges that State Farm prevented the plaintiff from discovering the RICO violations by refusing discovery in the related state court case. Specifically, the plaintiff asserts that only when State Farm answered certain interrogatories in the state court case did the plaintiff discover the RICO violations. These facts, however, do not constitute fraudulent concealment.
 
 
 17
 Simply providing answers that [are] considered unsatisfactory or evasive is not sufficient to allege active concealment. Specific affirmative efforts to conceal the fraud must be alleged. Tomera, 511 F.2d at 510. Evasiveness, once it becomes obvious, is the exact opposite of active concealment.
 
 
 18
 Hernandez v. Childers, 736 F.Supp. 903, 909 (N.D.Ill.1990). See Unytite, Inc. v. Lohr Structural Fasteners, Inc., No. 91-C-2849, 1992 WL 220918 (N.D.Ill. Sept. 1, 1992). Inadequate responses to discovery requests in civil litigation is not the type of "concealment" that amounts to fraud. The plaintiff had to allege that State Farm took affirmative steps to conceal information, not that State Farm failed to supply it. In the usual RICO case, there is no underlying state cause of action involving earlier requests for discovery. Once a RICO complaint is filed in good faith, the rules of discovery are then available to the plaintiff. See Harper, James & Gray, The Law of Torts, § 7.14, p. 470 (2d ed. 1986) (and cases cited). Silence constitutes fraud on the rarest of occasions, and certainly not in the context of discovery in a separate case. In this case the plaintiff cannot seriously imply that State Farm's use of the defenses available in the state court discovery process constitutes fraud.
 
 
 19
 As a final point, the plaintiff alleges that the district court erred by not holding an evidentiary hearing. No hearing in this case could salvage the plaintiff's case. The court was concerned from the outset that the plaintiff failed to show the timeliness of the RICO claims. The plaintiff could have survived dismissal by simply alleging sufficient facts in the proposed amended complaint or the RICO statement he filed with the court. But in all good faith, this he could not do. Also, no evidentiary hearing is necessary where the undisputed facts require dismissal. Considering the disposition of this appeal, we need not consider State Farm's argument that the plaintiff's claims are barred by the doctrine of collateral estoppel.
 
 III. Conclusion
 
 20
 As a general rule, a civil RICO claim accrues when the plaintiff discovers an injury, not when he discovers the pattern of racketeering. Under this rule the plaintiff in this case admits that his RICO claims are barred by the applicable four year statute of limitations. The plaintiff has also failed to plead affirmative actions on the part of State Farm to constitute fraudulent concealment. For these reasons, the district court's dismissal of this case is AFFIRMED.
 
 
 
 [1]
 The district court dismissed the original complaint on February 27, 1992. Within the ten day period allowed under Fed.R.Civ.P. 59(e), the plaintiff filed a motion to reconsider and for leave to file an amended complaint on March 9, 1992. This preserved for appellate review both the district court's dismissal of the original complaint and the court's denial of the plaintiff's motion for reconsideration
 
 
 [2]
 In a footnote, we noted that
 Under a separate accrual rule, a new cause of action accrues only when there is a new instance of wrongful conduct and a new injury. Different injuries flowing from the same conduct are not usually actionable in separate lawsuits. There is an exception to this rule only for late-developing injuries that cannot be proved in the first lawsuit. McCool, 972 F.2d at 1465 n. 10.
 
 
 [3]
 The plaintiff filed his opening brief on August 11, 1992. McCool was decided on August 21, 1992, upon which State Farm heavily relied in their response brief. However, the plaintiff filed no reply and failed to address the applicability of McCool at oral argument
 
 
 [4]
 Equitable tolling may also apply where the plaintiff affirmatively pleads due diligence. Suslick v. Rothschild Sec. Corp., 741 F.2d 1000, 1004 (7th Cir.1984). In this case the plaintiff does not raise the elements of such an argument, relying rather on State Farm's fraudulent concealment. This changes the focus of the inquiry from the plaintiff's inaction to State Farm's actions. Thus, we need not address State Farm's arguments concerning the plaintiff's actual or constructive knowledge of the facts in this case