**ZAPTRON (HK) LTD., Plaintiff,**

v.

**AIR SEA TRANSPORT, INC., (Chicago), Defendant.**

**Chicago Import, Inc., Counterplaintiff,**

v.

**Zaptron (HK) Ltd., Counterdefendant.**

No. 02 C 7489.

United States District Court, N.D. Illinois, Eastern Division.

April 20, 2004.

---

Cozen O'Connor, Chicago, IL, for Plaintiff.

Adrian Vuckovich, Collins & Bargione, Chicago, IL, for Defendant Air Sea Transport.

Ronald R. Rassin, Robbins, Salomon & Patt, Chicago, IL, for Third–Party Plaintiff.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of counter-defendant Zaptron (HK) Ltd. ("Zaptron") to dismiss Count I of the Third Amended Counterclaim of counterplaintiff Chicago Import, Inc. ("Chicago Import"), or in the alternative, to sever that count from the underlying litigation.

## I. BACKGROUND

Chicago Import is a domestic wholesale distributor of toys, dolls, watches, and other assorted items, and maintains two show-rooms in Chicago. Zaptron is a Hong Kong broker-distributor and trading company, which purchases items at wholesale from foreign manufacturers. Chicago Import brings count I of its third amended counterclaim against Zaptron, alleging it committed fraud in connection with Chicago Import's purchase of various items. Zaptron now moves to dismiss this count, arguing that Chicago Imports has failed to plead fraud with particularity under Fed.R.Civ.P. 9(b).

According to Chicago Import's allegations, representatives from Chicago Imports, Zaptron, and various foreign manufacturers met in Hong Kong prior to and during 2001 to negotiate Chicago Import's purchase of various items. (*Third Amended Counterclaim,* ¶ 6). Chicago Import made its selection of items on what Zaptron described as a "worksheet," which described each item, and indicated quantity and price. (*Id.*). Each manufacturer had its own worksheet. (*Id.*). After Chicago Import completed its selections, Zaptron purportedly placed the order with the manufacturer at the agreed upon price and arranged for shipping. (*Id.,* ¶ 7). Chicago Import and Zaptron agreed that Zaptron would invoice Chicago Import at the agreed upon price that the manufacturer was invoicing Zaptron. (*Id.,* ¶ 8). Zaptron was responsible for payment to the manufacturers. (*Id.,* ¶ 9).

Chicago Import alleges that, from 1994 through 2001, the price Zaptron invoiced Chicago Import was more than the price the manufacturers invoiced Zaptron. (*Id.,* ¶ 11).

According to Chicago Import, Zaptron and the manufacturers had fraudulently agreed that the manufacturers would invoice Zaptron at a lower price than the agreed upon price that had been negotiated. (*Id.*). Zaptron did not disclose this price reduction to Chicago Import, and it retained the difference. (*Id.*). Chicago Import claims to have discovered the difference in pricing when it received an invoice Zaptron mistakenly sent it, which indicated the prices the manufacturer invoiced Zaptron were lower than those Zaptron charged to Chicago Import. (*Id.*, ¶ 12). Prior to July 15, 1999, when Chicago Import confronted Zaptron about the discrepancy—which amounted to a total of over $35,000 for the first six months of 1999 alone—Zaptron attributed it to computer error. (*Id.*, ¶ 13).

Chicago Import further alleges that "[s]ometime between 1994 and 1999, Zaptron knew that the ... price Zaptron was charged by the manufacturer was lower than the ... price Zaptron was invoicing Chicago Import," (*Id.*, ¶ 14), and that "[s]ometime between 1994 and 1999, Zaptron intended that Chicago import rely upon the ... price in the invoice rendered by Zaptron to Chicago Import as being the same ... price paid by Zaptron to the manufacturer." (*Id.*, ¶ 15). Chicago Import claims it reasonably relied upon the invoiced price being the same as the manufacturer's price between 1994 and 2001, and that it was unaware of any agreement between Zaptron and the manufacturers for a lower price. (*Id.*, ¶ 16). According to Chicago Import, Zaptron continued its practice of invoicing Chicago Import at a higher price than the manufacturers charged through the termination of their dealings in 2001, including merchandise within the sixteen containers shipped from July through October 2001, which are the subject of the complaint Zaptron filed against Air Sea Transport, Inc. (Chicago). (*Id.*, ¶ 17).

## II. *ANALYSIS*

■ Under Fed.R.Civ.P. 9(b), a charge of fraud must be pleaded with particularity. The complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Kennedy v. Venrock Associates,* 348 F.3d 584, 593 (7th Cir.2003). Here, Chicago Import alleges the identity of the person making the misrepresentation: Zaptron. *See, AAR Intern., Inc. v. Vacances Heliades S.A.,* 202 F.Supp.2d 788, 799 (N.D.Ill.2002) (individual need not be specifically identified where only defendant is corporation). It indicates that the place of the misrepresentation was Hong Kong, and that the content of the misrepresentation was that Zaptron would invoice Chicago Import the same price that the manufacturers invoiced Zaptron. According to the third amended complaint, the misrepresentation was communicated directly during face-to-face negotiations between representatives of the parties.

■ The problem with the allegations is the time of the misrepresentation: Chicago Import claims it took place "prior to and during 2001." (*Third Amended Counterclaim,* ¶ 8). While it is true that the time requirement is not exact, the plaintiff must at least allege "an approximate time frame." *Hernandez v. Childers,* 736 F.Supp. 903, 912 (N.D.Ill.1990). In this case, Chicago Import is unable to be any more exact than claiming the agreement regarding pricing occurred "during and prior to 2001"—an unlimited, open-ended period that is a bit too wide a range to be considered approximate. As the allegations center on one alleged misrepresentation by Zaptron as to the price it would be invoicing Chicago Import, Chicago Import should be able to provide a far more narrow approximation of when it occurred. *See, e.g., U.S. S.E.C. v. Santos,* 292 F.Supp.2d 1046, 1050 (N.D.Ill.2003) (time frame of one month sufficient); *Ward Enterprises, Inc. v. Bang & Olufsen,* No.02 C 7640, 2003 WL 22859793, *2 (N.D.Ill.Dec.2, 2003) (time frame of month-long negotiations sufficient); *cf. Schiffels v. Kemper Financial Services, Inc.,* 978 F.2d 344, 352 (7th Cir.1992) (ten-month time frame too broad); *Tango Music, L.L.C. v. Deadquick Music, Inc.,* No. 99 C 7331, 2001 WL 897606, *5 (N.D.Ill. Aug.9, 2001) (one-year time frame too broad). In addition, the time frame Chicago Import alleges is so wide that it undermines other portions

of the third amended counterclaim, where Chicago Import suggests the fraud occurred prior to 1999, or as early as 1994. (*Third Amended Counterclaim*, ¶¶ 11–16). Obviously, then, the price agreement could not have occurred *during* 2001, which Chicago Import alleges might have been the case. Accordingly, we must dismiss the third amended counterclaim for failure to plead fraud with particularity under Fed.R.Civ.P. 9(b).

### III. CONCLUSION

For the foregoing reasons, the counterdefendant's motion to dismiss Count I of the counterplaintiff's Third Amended Counterclaim is GRANTED and the count is dismissed without prejudice.